# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**SCOTT H. DUERRING**
**MARIELENA DUERRING**
Duerring Law Offices
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**IAN MCLEAN**
Deputy Attorney General
Indianapolis, Indiana



FILED

Jun 22 2012, 9:05 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

KARLA P. ESTRADA,                )
                                 )
    Appellant-Defendant,         )
                                 )
        vs.                   )    No. 20A03-1110-CR-474
                                 )
STATE OF INDIANA,                )
                                 )
    Appellee-Plaintiff.          )

APPEAL FROM THE ELKHART CIRCUIT COURT
The Honorable Terry C. Shewmaker, Judge
Cause No. 20C01-1005-FB-26

**June 22, 2012**

**OPINION - FOR PUBLICATION**

**GARRARD, Senior Judge**

## STATEMENT OF THE CASE

Karla P. Estrada appeals her convictions and aggregate twenty-four-year sentence for two counts of Class B felony armed robbery as an accomplice and one count of Class C felony conspiracy to commit robbery. We affirm.

## ISSUES

Estrada presents four issues, which we reorder and restate as:

I. Whether the trial court abused its discretion by denying her motion to dismiss.

II. Whether the trial court abused its discretion by admitting her statement to police into evidence.

III. Whether her conspiracy conviction violates Indiana's double jeopardy prohibition.

IV. Whether her twenty-four-year sentence is inappropriate.

## FACTS AND PROCEDURAL HISTORY[1]

In the early morning hours of May 2, 2009, seventeen-year-old Estrada asked Luis Torres, Diego Gonzalez, and Jorge Ochoa for help. She told them that she needed money to send to her cousins in Texas. Torres suggested that they rob a gas station, and everyone agreed.

Estrada drove Torres, Gonzalez, and Ochoa to the 7-Eleven on County Road 24 and State Road 19 in Elkhart County. Torres and Ochoa went into the store with their hoods up and masks on. Torres had a hand under his clothing as if he had a gun. Ochoa held a beer bottle by its neck like a club. Torres ordered, "Give me the fuckin' money."

_____

[1] Estrada has filed a motion for oral argument. We deny this motion by separate order issued contemporaneously with this opinion.

Tr. p. 230. The store clerk opened both registers and handed Torres about $600. Torres and Ochoa ran to the car. Estrada drove them away.

In the car, the four decided to commit another robbery. About a half an hour after the first robbery, Estrada parked near the 7-Eleven on Old U.S. 20 and County Road 13 in Elkhart County. Torres and Gonzales went into the store with their hoods up and masks on. Torres had a beer bottle under his clothing as if he had a gun. Gonzalez had a beer bottle in his hand. Torres ordered, "Give me your fuckin' money, bitch." *Id.* at 106. The store clerk opened a register and handed Gonzalez $300. Torres and Gonzalez ran to the car. Estrada drove them away.

In the car, Torres suggested that they go to a third location. About an hour later, Estrada parked near a Speedway gas station. Torres and Ochoa went into the store, but this time, they carried no weapons. Torres demanded money from the store clerk, who handed him $500. Torres and Ochoa ran to the car. Estrada drove to Torres's and Gonzalez's apartment, where the four split the money from all three robberies.

On May 8, 2009, the group committed a robbery at a Huck's gas station. On May 9, 2009, they committed a robbery at a different 7-Eleven. Each time, the males entering the store had their hands under their clothing as if they had weapons, but no weapons were seen.

The robberies went unsolved until around February 2010, when Torres was arrested in Noble County for illegal consumption of alcohol by a minor. While being booked into jail, Torres, drunk, told an officer that he had been involved in several

3

robberies. Detective Mitch Hershberger from the Goshen Police Department later spoke with Torres, who implicated himself, Estrada, Gonzalez, and Ochoa in the robberies.

Detective Hershberger went to Estrada's place of employment, told Estrada that her name had come up in connection with an incident, and asked her to accompany him to the police station. Detective Hershberger then called Estrada's home and requested that her parents or guardian meet them at the station.

Estrada's mother Patricia Estrada arrived with Edwin Cerone, a man she identified as her husband. Because Patricia spoke Spanish but no English, Detective Hershberger asked Officer Mario Mora, who was fluent in Spanish, to translate. Officer Mora brought with him a juvenile advisement of rights form that had been translated into Spanish. The form contained two sections: the top of the form listed each of the juvenile's rights, and the bottom of the form consisted of a paragraph acknowledging and waiving the juvenile's rights as well as a space for the juvenile and his or her parent or guardian to sign the waiver. Officer Mora read off each right listed on the form. He then asked Patricia and Cerone if they wanted to talk with Estrada. Patricia said no. Officer Mora then handed the form to Cerone, who gave it to Patricia, who gave it to Estrada. Patricia asked if she should sign the form, and Officer Mora responded that she needed to read it. Estrada read the waiver paragraph at the bottom of the form to Patricia while Patricia looked at the form over Estrada's shoulder. Estrada and Patricia then signed the waiver. Estrada said that she understood everything and told Patricia that she was going to talk with Detective Hershberger. Officer Mora again asked Patricia if she wanted to talk with Estrada. Patricia said no. During the interview, Estrada admitted that she knew Torres,

4

Gonzalez, and Ochoa and that she had been involved in the Speedway robbery. Even though the Speedway robbery did not involve any weapons, Estrada stated that a bottle was used.

In March 2010, the State filed a delinquency petition against Estrada for three counts of Class C felony robbery if committed by an adult. The petition covered the last three robberies, where no weapons were seen: the Speedway robbery on May 2, 2009, the Huck's robbery on May 8, 2009, and the 7-Eleven robbery on May 9, 2009. Estrada admitted to the allegations and was adjudicated a delinquent.

In May 2010, the State charged Estrada with two counts of Class B felony armed robbery as an accomplice based on the first two robberies. Ind. Code §§ 35-42-5-1 (1984), 35-41-2-4 (1977). The State also charged her with one count of Class C felony conspiracy. Ind. Code § 35-41-5-2 (1977). Estrada filed a motion to dismiss the case, arguing that her adult criminal prosecution was barred by her juvenile adjudications on the three other robberies. After a hearing, the trial court denied the motion.

During the course of her jury trial in August 2011, Estrada filed a motion to suppress her statement to Detective Hershberger. After a hearing outside the presence of the jury, the trial court denied the motion. When the trial continued, Estrada's statement was admitted over objection. The jury found Estrada guilty of all three charges, and the trial court later sentenced her to an aggregate term of twenty-four years. Estrada now appeals.

5

DISCUSSION AND DECISION

I. MOTION TO DISMISS

Estrada first challenges the trial court's denial of her motion to dismiss. We review a trial court's denial of a motion to dismiss for an abuse of discretion. *Allen v. State*, 956 N.E.2d 195, 196 (Ind. Ct. App. 2011). An abuse of discretion occurs when the decision is clearly against the logic and effect of the facts and circumstances or when the trial court has misinterpreted the law. *Id.* at 196-97. We may affirm a trial court's judgment if it is sustainable on any basis in the record. *Benham v. State*, 637 N.E.2d 133, 138 (Ind. 1994) (affirming trial court's denial of motion to dismiss on different basis than trial court).

Estrada contends that the trial court should have granted her motion to dismiss because the charges were barred by Indiana Code section 35-41-4-4 (1977), the successive prosecution statute, which provides in relevant part:

> (a) A prosecution is barred if all of the following exist:
>> (1) There was a former prosecution of the defendant for a different offense or for the same offense based on different facts.
>> (2) The former prosecution resulted in an acquittal or a conviction of the defendant or in an improper termination under section 3 of this chapter.
>> (3) The instant prosecution is for an offense with which the defendant should have been charged in the former prosecution.

Specifically, Estrada argues that she was subjected to a juvenile proceeding for the last three robberies, that the proceeding resulted in juvenile adjudications for what would be Class C felony robbery if committed by an adult, and that the criminal charges here are for offenses that should have been charged in the juvenile proceeding. The State

6

responds that the successive prosecution statute does not apply because juvenile proceedings are civil matters and do not result in criminal convictions.

We need not decide whether Indiana Code section 35-41-4-4 applies to juvenile proceedings to resolve the issue before us. Assuming without deciding that it does, subsections (a)(1) and (a)(2) appear to be satisfied. However, Estrada must show that subsection (a)(3) has been met, that is, that the two counts of Class B felony armed robbery and one count of Class C felony conspiracy "should have been charged" in the juvenile delinquency petition.

This brings us to a question of subject matter jurisdiction. Subject matter jurisdiction concerns whether a court has jurisdiction over the general class of actions to which a particular case belongs. *Truax v. State*, 856 N.E.2d 116, 121-22 (Ind. Ct. App. 2006). Subject matter jurisdiction must be derived from the Constitution or statute and cannot be conferred by the consent or agreement of the parties. *Id.* at 122.

Pursuant to Indiana Code section 31-30-1-4 (2008), a juvenile court lacks subject matter jurisdiction over certain offenses if the juvenile was sixteen years of age or older at the time of the alleged violation:

> (a) The juvenile court does not have jurisdiction over an individual for an alleged violation of:
>   (1) IC 35-41-5-1(a) (attempted murder);
>   (2) IC 35-42-1-1 (murder);
>   (3) IC 35-42-3-2 (kidnapping);
>   (4) IC 35-42-4-1 (rape);
>   (5) IC 35-42-4-2 (criminal deviate conduct);
>   (6) IC 35-42-5-1 (robbery) if:
>       (A) the robbery was committed while armed with a deadly weapon; or

7

(B) the robbery results in bodily injury or serious bodily injury;
(7) IC 35-42-5-2 (carjacking);
(8) IC 35-45-9-3 (criminal gang activity);
(9) IC 35-45-9-4 (criminal gang intimidation);
(10) IC 35-47-2-1 (carrying a handgun without a license), if charged as a felony;
(11) IC 35-47-10 (children and firearms), if charged as a felony;
(12) IC 35-47-5-4.1 (dealing in a sawed-off shotgun); or
(13) any offense that may be joined under IC 35-34-1-9(a)(2) with any crime listed in subdivisions (1) through (12);

if the individual was at least sixteen (16) years of age at the time of the alleged violation.

Estrada was charged with two counts of Class B felony robbery while armed with a deadly weapon and one count of Class C felony conspiracy for offenses she committed at the age of seventeen. Under subsection (a)(6)(A), the juvenile court lacked jurisdiction over the armed robbery charges.

Because the offense of conspiracy is not specifically enumerated in the statute, we must determine whether, pursuant to subsection (a)(13), it is an "offense that may be joined under IC 35-34-1-9(a)(2)" with the armed robbery charges. The relevant portion of Indiana Code section 35-34-1-9 (1981) provides:

(a) Two (2) or more offenses may be joined in the same indictment or information, with each offense stated in a separate count, when the offenses:
. . .
(2) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan.

The conspiracy count alleged that on May 2, 2009, Estrada conspired with Gonzalez, Torres, and Ochoa to commit robbery:

[O]n or about the 2nd day of May, 2009, at the County of Elkhart, State of Indiana, one KARLA P. ESTRADA did, with the intent to commit a felony,

8

> agree with another person, to-wit: DIEGO ARMANDO GONZALEZ, LUIS M. TORRES, and JORGE L. OCHOA, to commit the felony Robbery, defined under Ind. Code §[ ]35-42-5-1 as to knowingly take property from another person while putting any person in fear, and did engage in conduct constituting an overt act toward said Robbery by driving to and robbing three (3) separate convenience stores . . . .

Appellant's App. p. 150. It takes no stretch of the imagination to conclude that the conspiracy charge may be joined with the armed robbery charges under Indiana Code section 35-34-1-9(a)(2). Estrada and her cohorts devised a plan to rob convenience stores after she asked for help in getting money for her cousins. Estrada thereafter drove the group to two 7-Elevens to commit robberies just a half an hour apart. Each time, two of her cohorts went into the store with their hoods up and masks on, one brandishing a beer bottle and the other pretending to have a gun under his clothing, demanded the store clerk to give them money, and fled to the car, where Estrada drove them away. The conspiracy charge was thus an offense within the ambit of subsection (a)(13) of Indiana Code section 31-30-1-4 and therefore outside of the juvenile court's jurisdiction.

Because the juvenile court lacked jurisdiction over the criminal charges here, the criminal prosecution of Estrada was not for offenses with which she "should have been charged" in the juvenile proceeding. Even if the successive prosecution statute applies to juvenile proceedings, Estrada has not met subsection (a)(3) of the successive prosecution statute. We therefore conclude that the trial court did not abuse its discretion by denying Estrada's motion to dismiss.

9

## II. ADMISSION OF EVIDENCE

Estrada next contends that the trial court erred by denying her motion to suppress her statement to Detective Hershberger. Although Estrada originally challenged the admission of the evidence through a motion to suppress, she appeals following a completed trial. The issue is therefore appropriately framed as whether the trial court abused its discretion by admitting the evidence at trial. *Collins v. State*, 822 N.E.2d 214, 218 (Ind. Ct. App. 2005), *trans. denied*. We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Id.* However, we must also consider the uncontested evidence favorable to the defendant. *Id.*

Estrada's challenges to the admissibility of her statement are based on the juvenile waiver of rights statute. The relevant portion of that statute provides that any rights guaranteed to a child under the federal or state constitutions or any other law may be waived only:

> (2) by the child's custodial parent, guardian, custodian, or guardian ad litem if:
> > (A) that person knowingly and voluntarily waives the right;
> > (B) that person has no interest adverse to the child;
> > (C) meaningful consultation has occurred between that person and the child; and
> > (D) the child knowingly and voluntarily joins with the waiver.

Ind. Code § 31-32-5-1 (1997); *S.D. v. State*, 937 N.E.2d 425, 429-30 (Ind. Ct. App. 2010), *trans. denied*. As a general rule, when a juvenile who is not in custody gives a statement to police, neither the safeguards of *Miranda* warnings nor the juvenile waiver statute is implicated. *S.D.*, 937 N.E.2d at 430. The parties do not discuss whether

Estrada was in custody when she gave her statement. For the purposes of this opinion, we assume without deciding that she was in custody.

Estrada argues that Patricia did not knowingly and voluntarily waive Estrada's rights. Indiana Code section 31-32-5-4 (1997) directs a juvenile court to consider all the circumstances of the waiver to determine whether it was made knowingly and voluntarily:

> In determining whether any waiver of rights during custodial interrogation was made knowingly and voluntarily, the juvenile court shall consider all the circumstances of the waiver, including the following:
> (1) The child's physical, mental, and emotional maturity.
> (2) Whether the child or the child's parent, guardian, custodian, or attorney understood the consequences of the child's statements.
> (3) Whether the child and the child's parent, guardian, or custodian had been informed of the delinquent act with which the child was charged or of which the child was suspected.
> (4) The length of time the child was held in custody before consulting with the child's parent, guardian, or custodian.
> (5) Whether there was any coercion, force, or inducement.
> (6) Whether the child and the child's parent, guardian, or custodian had been advised of the child's right to remain silent and to the appointment of counsel.

Estrada claims that Patricia's waiver of Estrada's rights was not knowing and voluntary because the advisement of rights form was improperly translated into Spanish. At the hearing on the motion to suppress Estrada's statement, certified Indiana Supreme Court interpreter Susannah Bueno testified that the Spanish translation of the advisement of rights form signed by Estrada and Patricia contained errors in grammar and syntax. Bueno's English translation of the list of juvenile rights is as follows:

> Before we ask any questions to your son, you should understand the civil rights that he has.

Your son has the right to remain silent.

Any statements that your son makes could be and will be used against him in court.

Your son has the right to consult with an attorney before he is questioned and to have an attorney present when he is being questioned.

If you don't have the means to hire an attorney, one will be appointed, if you want one before asking him the questions.

If your son answers the questions, he can stop answering at any time and remain silent.

Your son has the right for you to be present while he is being questioned.

Your son has the right to significant consultation with you before or during the questions.

State's Ex. XX; Defendant's Ex. C. Her English translation of the waiver paragraph is as

follows:

I have read this statement of my son's rights and I understand them and I am satisfied that my son also understands them. I am willing to have police agents ask questions to my son and that he gives statements to them. My son and I have consulted in a significant and conscious way and voluntarily agree with this waiver of rights. I don't want an attorney for my son at this moment. I understand very well and know what I am doing. This waiver of rights is not a result of threats, promises, force, o[r] pressure used by police agents over myself or my son.

State's Ex. XX; Defendant's Ex. C. Bueno stated that her translation of the form would

not necessarily be how another person would have translated it. Although she pointed to

a number of mistakes in the Spanish translation, however, she agreed with the State that

the list of rights indicated that the juvenile as opposed to the parent has those rights and

that "the document as a whole conveys the meaning it is intended to mean." Tr. p. 346.

12

Bueno was unable to speculate whether Patricia understood the form but stated that she herself understood the form. Based on Bueno's testimony, we conclude that the Spanish translation of the advisement of rights form adequately informed Patricia and Estrada of Estrada's rights.

Estrada also claims that Patricia's waiver of Estrada's rights was not knowing and voluntary because Patricia did not understand the consequences of Estrada's statements. Specifically, Estrada states that it would have been impossible for Patricia to understand the consequences of Estrada's statements given that the interrogation was conducted in English and further given that neither Patricia nor Estrada were informed that Estrada was a robbery suspect. The issue before us is whether Patricia's waiver of Estrada's rights was knowing and voluntary; therefore, the interrogation that occurred after the waiver at issue is not relevant to whether that waiver was knowing and voluntary.[2]

Further, we acknowledge that one of the factors a trial court must consider when determining whether a waiver is knowing and voluntary is whether the child and parent "had been informed of the delinquent act with which the child was charged or of which the child was suspected." Ind. Code § 31-32-5-4(3). Before Estrada and Patricia signed the waiver, Estrada had only been told that her name had come up in connection with an incident and Patricia had not been told why she was called to the police station. Nonetheless, this factor standing alone is insufficient to render the waiver unknowing and involuntary. *See Tingle v. State*, 632 N.E.2d 345, 352-53 (Ind. 1994) (rejecting

---

[2] We also note that before the interrogation, Officer Mora had explained to Patricia that it would be difficult for him to translate the conversation between Detective Hershberger and Estrada word-for-word but that if she wanted to know specifically what was being said, he would interrupt the questioning and explain it. Patricia agreed to this. During the interrogation, Patricia never asked Officer Mora to explain.

13

appellant's argument that waiver was not knowing and voluntary because neither he nor his grandmother was informed of potential charges or penalties and concluding that trial court was within its discretion to find this factor standing alone insufficient to render confession involuntary).

Instead, the trial court must consider all the circumstances of the waiver to determine whether it was made knowingly and voluntarily. Here, Estrada was just one month shy of her eighteenth birthday when Detective Hershberger told her that her name had come up in connection with an incident. She voluntarily accompanied Detective Hershberger to the police station, and Detective Hershberger contacted Patricia to request that she meet him and Estrada there. Estrada waited in an interview room for no more than thirty minutes before Patricia and Cerone arrived. Patricia and Cerone were then directed to the interview room where Estrada was waiting and were left alone with Estrada for about ten minutes. Officer Mora and Detective Hershberger then entered the room, and Officer Mora informed Patricia and Estrada of Estrada's rights, including that any of Estrada's statements could be used against her in court and that Estrada had the right to remain silent and to the appointment of counsel. Estrada read the waiver paragraph to Patricia, and both women subsequently signed the waiver. There is no evidence that Estrada was physically, mentally, or emotionally immature for her age or that she and Patricia were coerced, forced, or induced to sign the waiver. We conclude that Patricia's waiver of Estrada's rights was knowing and voluntary.

Estrada next argues that Detective Hershberger and Officer Mora did not comply with the meaningful consultation requirement of the juvenile waiver of rights statute.

14

The purpose of the meaningful consultation requirement is to afford the juvenile a stabilizing and comparatively relaxed atmosphere in which to make a serious decision that could affect the rest of his or her life. *Patton v. State*, 588 N.E.2d 494, 496 (Ind. 1992). The opportunity for the juvenile and the parent to consult with each other must occur before the juvenile's rights are waived. *D.M. v. State*, 949 N.E.2d 327, 335 (Ind. 2011). The consultation requirement is satisfied when the State demonstrates actual consultation of a meaningful nature or the express opportunity for such consultation, which is then forsaken in the presence of the proper authority by the juvenile, so long as the juvenile knowingly and voluntarily waives his or her constitutional rights. *Id.*

Estrada first claims that she was not informed that she, as opposed to Patricia, had the right to meaningful consultation. We disagree. As noted above, the Spanish translation of the advisement of rights form adequately informed Patricia and Estrada of Estrada's rights. One of those rights was that Estrada had the right to meaningful consultation.

Second, Estrada claims that although Patricia was asked whether she wanted to consult with Estrada, Estrada was never asked if she wanted to consult with Patricia. The evidence shows that Officer Mora advised Patricia and Estrada of Estrada's rights, including that she had the right to meaningful consultation. He then asked Patricia and Cerone if they wanted to talk with Estrada, and Patricia answered no. After Estrada read the waiver paragraph aloud, she and Patricia signed the waiver. Estrada said that she understood everything and told Patricia that she was going to talk with Detective Hershberger. We acknowledge that Officer Mora asked Patricia and not Estrada whether

15

she wanted the opportunity for consultation and that Patricia and not Estrada waived the right to consultation. However, the evidence in this case shows that Estrada was informed of the right to meaningful consultation, understood that right, and decided to talk with Detective Hershberger without taking advantage of that right. This evidence is sufficient to show that Estrada was given an opportunity for meaningful consultation and waived that right.

Estrada also appears to argue that because neither she nor Patricia were told before the interrogation that Estrada was a robbery suspect, any consultation with Patricia would not have been meaningful. Appellant's Br. pp. 17-18 ("[Patricia]'s ignorance of the real motivation for the interrogation, paired with her inability to speak the language creates a situation in which Estrada's right to have the benefit of her parent's advice with respect to waiving her rights were completely disregarded."). We disagree. Estrada and Patricia were advised that any statements Estrada made could be used against her. This was sufficient to inform them of the possible ramifications of abandoning the right to remain silent. *See Colorado v. Spring*, 479 U.S. 564, 576-77, 107 S. Ct. 851, 93 L. Ed. 2d 954 (1987) ("We have held that a valid waiver does not require that an individual be informed of all information useful in making his decision or all information that might affect his decision to confess. We have never read the Constitution to require that the police supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights. Here, the additional information could affect only the wisdom of a *Miranda* waiver, not its essentially voluntary and knowing nature." (quotations and citations omitted)).

16

We therefore conclude that the trial court did not abuse its discretion by admitting Estrada's statement to Detective Hershberger.

## III. DOUBLE JEOPARDY

Estrada also contends that her conspiracy conviction violates Indiana's double jeopardy prohibition. Indiana's double jeopardy clause states, "No person shall be put in jeopardy twice for the same offense." Ind. Const. art. 1, § 14. Our Supreme Court has held that two or more offenses are the "same offense" in violation of Indiana's double jeopardy clause "if, with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999).

Estrada's double jeopardy challenge is based on the actual evidence test. Under the actual evidence test, the evidence presented at trial is examined to determine whether each challenged offense was established by separate and distinct facts. *Lee v. State*, 892 N.E.2d 1231, 1234 (Ind. 2008). To show that two challenged offenses constitute the "same offense" in a claim of double jeopardy, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense. *Id.* In *Spivey v. State*, our Supreme Court further explained:

> The test is *not* merely whether the evidentiary facts used to establish *one* of the essential elements of one offense may also have been used to establish *one* of the essential elements of a second challenged offense. In other words, under the *Richardson* actual evidence test, the Indiana Double Jeopardy Clause is not violated when the evidentiary facts establishing the

17

essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense.

761 N.E.2d 831, 833 (Ind. 2002). Application of the actual evidence test requires the reviewing court to identify the essential elements of each of the challenged crimes and to evaluate the evidence from the fact-finder's perspective, considering where relevant the jury instructions, arguments of counsel, and other factors that may have guided the fact-finder's determination. *Id.* at 832.

Estrada argues that the actual evidence used to convict her of conspiracy was the same evidence used to convict her of the robberies. To convict Estrada of conspiracy to commit robbery, the State must have proven that Estrada agreed with another person to commit robbery with the intent to commit robbery and that Estrada or another party to the agreement performed an overt act in furtherance of the agreement. *See* Ind. Code § 35-41-5-2; Appellant's App. p. 150; *Griffin v. State*, 717 N.E.2d 73, 87 (Ind. 1999). To convict Estrada of armed robbery as an accomplice, the State must have proven that Estrada knowingly or intentionally aided, induced, or caused another person to knowingly or intentionally take property from another person or from the presence of another person by putting any person in fear while armed with a deadly weapon. *See* Ind. Code §§ 35-42-5-1, 35-41-2-4; Appellant's App. p. 150.

Estrada claims that the same evidence used to show the overt act element of conspiracy—that she drove to and robbed three separate convenience stores—was the same evidence used to show that she aided, induced, or caused the armed robberies—that she drove to and from each robbery. Appellant's Br. p. 14. Conspiracy, however, does

18

not have only one essential element. In addition to the overt act element, the State must also prove an agreement to commit the robbery with the intent to commit the robbery. *See Spivey*, 761 N.E.2d at 833-34 (rejecting actual evidence challenge to felony murder and conspiracy to commit burglary convictions where evidentiary facts proving essential elements of felony murder did not prove agreement element of conspiracy and where evidentiary facts proving essential elements of conspiracy did not prove that victim was killed during burglary). We therefore must evaluate the evidence from the jury's perspective to determine whether there is a reasonable possibility that the evidence used to show the overt act element of conspiracy and that Estrada aided, induced, or caused each armed robbery—both shown by Estrada driving to the robberies—was also used to show the agreement element of conspiracy.

Gonzalez and Torres testified at trial. Gonzalez testified that Estrada asked him, Torres, and Ochoa for help in getting money to send to her cousins in Texas, and Torres suggested that they rob a gas station. Estrada then drove the group to three different locations. At each location, two of the passengers got out of the car and robbed the store. In the car after each robbery, they all laughed and joked. After the robberies, Estrada drove them back to Gonzalez's and Torres's apartment where the group split the money.

Torres testified that everyone needed money, so he suggested that they commit robbery. He further testified that they each agreed to commit robbery. Like Gonzalez, Torres stated that Estrada drove them to three different locations, each place was robbed, and Estrada drove them back to the apartment where the group split the money.

19

In the final instructions, the jury was instructed that the State had to prove that Estrada aided, induced, or caused each armed robbery "[b]y driving to and from the robbery." Appellant's App. pp. 70, 71. The final instructions for conspiracy showed that the overt act of "driving to and robbing three separate convenience stores" was a separate element from the agreement to commit the robbery:

> Before you may convict the Defendant, KARLA P. ESTRADA, the State must have proved each of the following elements beyond a reasonable doubt:
> 1. The Defendant, KARLA P. ESTRADA,
> 2. agreed with another person, Diego Armando Gonzales, Luis M. Torres and Jorge L. Ochoa, to commit a felony, to-wit: the crime of Robbery,
> 3. with the intent to commit the crime, and
> 4. KARLA P. ESTRADA performed an overt act in furtherance of the agreement
> 5. by driving to and robbing three separate convenience stores.
> If the State failed to prove each of these elements beyond a reasonable doubt, you should find the Defendant, KARLA P. ESTRADA, not guilty of the crime of Conspiracy, a Class C Felony as charged in Count III.

*Id.* at 69.

In closing arguments, the State pointed to evidence that Estrada drove the car to each location to show that she aided, induced, or caused each armed robbery:

> What did the defendant do? She drove the red car all night to each and every location. . . .
> . . . The testimony of Diego Gonzalez standing alone is direct evidence to convict the defendant. But we also know that Luis Torres told you the exact same thing. Again, direct evidence. The defendant drove this red car all night.

Tr. pp. 516-17. For conspiracy, the State highlighted that the agreement element is separate from the overt act element:

20

A conspiracy, the idea is this agreement. Conspiracy means that we have to prove the defendant with the intent to commit the felony, in this case robbery, agreed with other people to commit the felony, and that someone did an overt act in furtherance.

*Id.* at 518. The State noted that the three robberies occurred in one night. The State also pointed out that Estrada admitted to Detective Hershberger that she knew Torres, Gonzales, and Ochoa, was with them during the Speedway robbery, and that her car was used. The State further asked the jury to use their common sense to determine whether Estrada drove that night as Torres and Gonzalez had testified. The State then said:

Using your common sense, making inferences which you are permitted to do based upon the evidence, the state has proven to you beyond a reasonable doubt that there was this agreement that they intended; that is, was their conscious objective to commit robberies that night. That they agreed on it and that they all did the overt acts. The defendant's specific act was driving to each location.

*Id.* at 520.

We acknowledge that the State's closing argument as to conspiracy did not point to Gonzalez's and Torres's testimony establishing that Estrada needed money, Torres suggested robbery, and they each agreed. Nevertheless, this evidence was presented to the jury. Moreover, the jury instructions and the State's closing argument made it clear that the agreement and the overt act were separate elements of the crime of conspiracy. Viewing the evidence from the jury's perspective, we conclude that there is no reasonable possibility that the evidence used to show the overt act element of conspiracy and that Estrada aided, induced, or caused each robbery—both shown by Estrada driving to the robberies—was also used to show the agreement element of conspiracy. *See Griffin*, 717

21

N.E.2d at 89 ("To establish that two offenses are the same offense under the actual evidence test, the possibility must be reasonable, not speculative or remote.").

Estrada nonetheless cites *Guffey v. State*, 717 N.E.2d 103 (Ind. 1999), in support of her double jeopardy claim. In that case, the defendant was convicted of aiding in the commission of armed robbery and conspiracy to commit armed robbery. Our Supreme Court determined that the evidence at trial showed elaborate planning and implementation of the robbery. However, the jury was instructed to direct its attention to specific evidentiary facts. Regarding aiding in the commission of armed robbery, the jury was instructed that the defendant handed the gun to his cohort and waited for his cohort to leave the gas station knowing his cohort would rob the gas station. Regarding conspiracy to commit armed robbery, the jury was instructed that the defendant and his cohort performed overt acts in furtherance of their agreement by the defendant handing the gun to his cohort, his cohort entering the gas station, and the defendant waiting for him to leave the gas station. The Supreme Court vacated the defendant's conspiracy conviction, finding that there was a reasonable possibility that the jury used the same evidentiary facts, that the defendant provided his cohort with the gun and waited for his cohort to commit the robbery, to prove the essential elements of both aiding in the commission of armed robbery and conspiracy to commit armed robbery. *Id.* at 107.

*Guffey* is distinguishable from the case before us. In *Guffey*, the jury was given the option to use the same evidentiary facts to prove both the aiding in the commission of armed robbery and conspiracy to commit armed robbery. The instructions on conspiracy did not distinguish between the agreement and the overt act; instead, the jury was

22

instructed that if it found that the defendant provided his cohort with the gun and waited for his cohort to leave the gas station, it could find the defendant guilty of conspiracy. Here, in contrast, the jury was given the same evidentiary facts to prove both charges of armed robbery but only the overt act element of conspiracy. While it is possible that the jury used the fact that Estrada drove to the robberies as the evidence showing both the agreement and the overt act, based on the jury instructions and the State's closing argument specifically distinguishing between the two elements, we find no reasonable possibility that the jury did so.

We conclude that Estrada's convictions do not violate Indiana's double jeopardy clause.

## IV. INAPPROPRIATE SENTENCE

Estrada finally contends that her twenty-four-year sentence is inappropriate. Although a trial court may have acted within its lawful discretion in imposing a sentence, Article 7, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of sentences through Indiana Appellate Rule 7(B), which provides that a court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." *Reid v. State*, 876 N.E.2d 1114, 1116 (Ind. 2007) (citing *Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (2007)). The defendant has the burden of persuading us that his or her sentence is inappropriate. *Id.* (citing *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006)).

We first look to the statutory ranges established for the classes of the offenses. Estrada was convicted of two counts of Class B felony armed robbery and one count of Class C felony conspiracy. The statutory range for a Class B felony is between six and twenty years, with the advisory sentence being ten years. Ind. Code § 35-50-2-5 (2005). The statutory range for a Class C felony is between two and eight years, with the advisory sentence being four years. Ind. Code § 35-50-2-6(a) (2005). The trial court sentenced Estrada to twelve years for each armed robbery and five years for conspiracy. The robbery convictions were ordered to be served consecutively, and the conspiracy conviction was ordered to be served concurrently with one of the robbery convictions, for an aggregate sentence of twenty-four years.

We next look to the nature of the offenses and Estrada's character. As for the nature of the offenses, Estrada asked her cohorts for help in getting money, and they all agreed to rob convenience stores. Estrada drove the group to and from each location, and within a couple of hours, they had committed three robberies. In the first two robberies, her cohorts held empty beer bottles as weapons. In between the robberies, they all laughed and joked in the car. We recognize, as did the trial court, that Estrada was the driver and did not enter any of the stores. Even so, it is significant that she was the person who asked for help in getting money and that she was complicit in crimes of a serious nature.

As for Estrada's character, we acknowledge that she was only seventeen at the time of these offenses. However, between the age of fifteen and the crime spree at issue here, Estrada had eleven contacts with the juvenile justice system. She has juvenile

24

adjudications for battery resulting in bodily injury, operating a motor vehicle without ever receiving a license, conversion, operating while intoxicated causing endangerment, false informing, and robbery (for the three unarmed robberies committed in the same time period as the armed robberies here). Estrada has been on probation and found to have violated that probation. She has been dishonorably discharged from probation for lying to the juvenile court about being in college and submitting a falsified letter purporting to be from a college professor. Estrada has also attempted to deceive electronic monitoring personnel by lying about being in school and trying to pass her boyfriend off as her uncle. Estrada's character shows disrespect for the judicial process and disregard of the law.

Estrada has failed to persuade us that her sentence is inappropriate.

## CONCLUSION

For the reasons stated, we affirm the trial court.

Affirmed.

FRIEDLANDER, J., and BRADFORD, J., concur.