# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

08/31/2017, 9:55 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew J. Buehler
Warsaw, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| J.N.,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | August 31, 2017<br><br>Court of Appeals Case No.<br>43A04-1703-JV-613<br><br>Appeal from the Kosciusko<br>Superior Court<br><br>The Honorable David C. Cates,<br>Judge<br><br>Trial Court Cause No.<br>43D01-1609-JD-268 |

**Altice, Judge.**

### Case Summary

[1] J.N. appeals his juvenile adjudication for committing an act that would constitute Level 3 felony child molesting if committed by an adult. Specifically, he contends that the juvenile court abused its discretion in admitting his videotaped statement to the investigating officer at the evidentiary hearing.

[2] We affirm.

## Facts & Procedural History

[3] Near the end of the school year in 2016, seventeen-year-old J.N., nine-year-old B.R., eight-year-old D.A., and D.A.'s six-year-old brother J.C. were playing in a wooded area after school behind their trailer park. In the woods, J.N. had a "hideout" with blankets and a pillow. *Transcript* at 42. J.N. eventually told B.R. and J.C. to go away for a few minutes, which they did. When B.R. returned, he observed D.A. "sucking [J.N.'s] private, his wiener." *Id.* at 37. J.N. told B.R. to go away and not to tell anybody. B.R. was scared and left.

[4] On July 9, 2016, D.A.'s mother took her to the hospital upon learning that J.N. had possibly molested D.A. Detective Todd Sautter of the Kosciusko County Sheriff's Department went to the hospital and spoke with D.A. and her family. Around this same time, B.R. told his parents about what he had seen several weeks earlier involving D.A. and J.N. Thereafter, on July 11, B.R. spoke with Detective Sautter.

[5] On July 12, 2016, J.N. and his mother (Mother) came to the sheriff's department for an interview with Detective Sautter. J.N. and Mother had

heard several recent rumors regarding various allegations being made by D.A., her family, and B.R. against J.N.[1]  At the beginning of the interview, Detective Sautter advised that he wanted to speak with J.N. regarding an incident that happened between J.N. and D.A.  Detective Sautter then read an advice of rights/waiver of rights form, which J.N. signed and Mother witnessed.  Thereafter, he informed J.N. and Mother that he was going to step out of the room so they could have private consultation time.  Detective Sautter returned a little over two minutes later after seeing that J.N. and Mother were no longer talking.  Upon his return, Detective Sautter asked if they had had a chance to talk.  He then read the juvenile waiver of rights form to J.N. and Mother, which they then executed.  Thereafter, J.N. made incriminating statements, including admitting to having had D.A. perform oral sex on him in the woods.

[6] On September 2, 2016, a delinquency petition was filed against J.N.  The juvenile court held a suppression hearing immediately before the fact-finding hearing on December 22, 2016.  J.N. sought to suppress his statement on the basis that the juvenile waiver was not properly obtained.  Specifically, J.N. argued that he and Mother were not provided a meaningful time for consultation – only two minutes – and were not informed of the delinquent act

---

[1] Mother indicated to Detective Sautter that she came for the interview because "there's too many stories floating around and too many things that I have questions on." *Exhibit Book* at State's Exhibit 1.  J.N. stated that B.R. had told four different stories.

of which he was suspected of committing. The juvenile court denied the motion to suppress.

[7] During the fact-finding hearing, B.R. and Detective Sautter testified, and J.N.'s statement was admitted into evidence. The juvenile court ultimately adjudicated J.N. delinquent for having committed what would be Level 3 felony child molesting if committed by an adult, noting that exclusion of the videotaped statement would not have changed this determination. Following a dispositional hearing, the court ordered J.N. to be placed with the Indiana Department of Correction Boys School for the completion of their program. J.N. now appeals. Additional facts will be provided below as needed.

## Discussion & Decision

[8] J.N. contends that the juvenile court erred in admitting his statement to Detective Sautter because certain procedural safeguards for the waiver of a juvenile's constitutional rights were not followed. Specifically, J.N. argues that he was not afforded an opportunity for meaningful consultation with Mother as required by Ind. Code § 31-32-5-1(2)(C). He also contends that the waiver was not made knowingly and voluntarily because prior to obtaining the waiver, Detective Sautter did not inform J.N. and Mother that J.N. was suspected of molesting D.A.

[9] The State bears the burden of proving beyond a reasonable doubt that the juvenile received all of the protections required by I.C. § 31-32-5-1 and that both the juvenile and his parent knowingly and voluntarily waived the juvenile's

rights. *D.M. v. State*, 949 N.E.2d 327, 334-35 (Ind. 2011). In reviewing a juvenile court's denial of a motion to suppress, we do not reweigh the evidence but instead examine the record to determine whether there is substantial evidence of probative value to support that decision. *Id*. at 335. We consider any conflicting evidence in a light most favorable to the juvenile court's decision, along with any substantial uncontested evidence. *Id*. And we will uphold the decision if it is supported by "a reasonable view of the evidence." *Id*.

[10] Although not addressed by the parties, we initially observe that it is not clear whether J.N. was actually in custody at the time he was interviewed by Detective Sautter. "As a general rule, when a juvenile who is not in custody gives a statement to police, neither the safeguards of a Miranda warning nor the juvenile waiver statute is implicated." *N.B. v. State*, 971 N.E.2d 1247, 1252 (Ind. Ct. App. 2012) (footnote omitted), *trans. denied*. To be custodial in the non-arrest context, the interrogation must commence after the juvenile's freedom of action has been deprived in a significant way. *Id*. In other words, would a reasonable person in similar circumstances believe he is not free to leave? *Id*.

[11] The threshold issue, therefore, should be whether J.N. was subjected to a custodial interrogation when he gave his statement. But the parties ignored this issue below and in this appeal. Accordingly, we will assume for the sake of argument that J.N. was subjected to a custodial interrogation.

[12] I.C. § 31-32-5-1 provides in relevant part as follows:

Any rights guaranteed to a child under the Constitution of the United States, the Constitution of the State of Indiana, or any other law may be waived only:

*** 

(2) by the child's parent…if:

(A) that person knowingly and voluntarily waives the right;

(B) that person has no interest adverse to the child;

(C) meaningful consultation has occurred between that person and the child; and

(D) the child knowingly and voluntarily joins with the waiver[.]

Further, I.C. § 31-32-5-4 sets out six circumstances to consider in determining whether the waiver of rights by the parent and juvenile was made knowingly and voluntarily, one of which – I.C. § 31-32-5-4(3) – is whether they had been informed of the delinquent act with which the child was charged or of which the child was suspected.

[13] We turn first to J.N.'s contention that he and Mother were not provided with a meaningful opportunity for consultation.[2] The consultation requirement is

---

[2] J.N. also argues that his rights were "subjectively waived" prior to the consultation with Mother because of the initial advice of rights/waiver of rights form that he signed and Mother witnessed. *Appellant's Brief* at 11. J.N. has waived this argument by failing to raise it below. Moreover, we observed that the requirements of I.C. § 31-32-5-1 may still be met and the waiver found knowing and voluntary if the record demonstrates that the child waived his rights again – either directly or impliedly – after being afforded the opportunity to engage in meaningful consultation with the child's parent. *See N.B.*, 971 N.E.2d at 1256. Here, J.N. did so directly by signing the juvenile waiver of rights form.

satisfied when actual consultation of a meaningful nature occurs, the purpose of which is to allow the juvenile to make a decision on whether to waive his rights in a comparatively relaxed and stable atmosphere. *D.M.*, 949 N.E.2d at 335. In this regard, the State need only prove that the police provided a relatively private atmosphere that was free from police pressure in which the juvenile and his parent could have a meaningful discussion about the allegations, circumstances of the case, and the ramifications of their responses to police questioning. *Id.*

[14] While we agree that two minutes is not a substantial amount of time in which to consult regarding waiving J.N.'s rights, the record establishes that it was sufficient under the circumstances of this case. Detective Sautter reentered the interrogation room only after observing that Mother and J.N. were no longer conversing. He then made sure to ask if they had been able to talk before he began reading the juvenile waiver of rights form to them. Moreover, Mother testified at the suppression hearing that she had an opportunity to talk with J.N. and that it was his decision to go ahead with the interview. Although she was supportive of this decision, Mother indicated that she warned J.N. that the detective was trained in asking questions. Mother testified further that she knew what was at stake and had advised her son accordingly before signing the waiver. Under these circumstances, we cannot say that the trial court abused its discretion in determining that Mother and J.N. were afforded an opportunity for meaningful consultation.

[15] Next, J.N. argues that his waiver was not knowing and voluntary because he was not advised of the "nature of the allegations that law enforcement was investigating prior to waiving his rights." *Appellant's Brief* at 12. J.N. notes that Detective Sautter made no mention of child molesting or sexual misconduct prior to obtaining the waiver.

[16] This is but one of six nonexclusive factors to be considered when determining whether a waiver is made knowingly and voluntarily.[3] Standing alone, this factor is insufficient to render a waiver unknowing and involuntary. *See Estrada v. State*, 969 N.E.2d 1032, 1042 (Ind. Ct. App. 2012) (citing *Tingle v. State*, 632 N.E.2d 345, 352-53 (Ind. 1994)), *trans. denied*.

[17] Here, the record indicates that before coming in for the interview, Mother and J.N. were keenly aware of rumors going around the trailer park regarding sexual activity between J.N. and eight-year-old D.A. Mother had seen or received text messages from D.A.'s mother a few days prior regarding the sexual abuse allegations, and J.N. noted that B.R. had told at least four

---

[3] I.C. § 31-32-5-4 requires the juvenile court to "consider all the circumstances of the waiver", including:

(1) The child's physical, mental, and emotional maturity.

(2) Whether the child or the child's parent…understood the consequences of the child's statement.

(3) Whether the child and the child's parent…had been informed of the delinquent act with which the child was charged or of which the child was suspected.

(4) The length of time the child was held in custody before consulting with the child's parent….

(5) Whether there was any coercion, force, or inducement.

(6) Whether the child and the child's parent…had been advised of the child's right to remain silent and to the appointment of counsel.

different stories. Under the circumstances, it is unlikely that J.N. was unclear about the nature of the interview.

[18] As J.N. essentially concedes, the other statutory factors also support a finding that the waiver in this case was voluntarily and knowingly made. J.N. was seventeen years old when he waived his rights, he and Mother understood the consequences of his statements, and there is no indication that he had been held in custody. Further, Mother and J.N. were fully advised of J.N.'s rights, and Detective Sautter did not use any coercion or force. The totality of the circumstances supports the trial court's determination that the waiver was knowingly and voluntarily made.

[19] Judgment affirmed.

Baker, J. and Bailey, J., concur.