Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 17 2013, 5:27 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DALE W. ARNETT**
Winchester, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW R. FALK**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| STANLEY D. WILLS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 18A02-1210-CR-834 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE DELAWARE CIRCUIT COURT
The Honorable Linda Ralu Wolf, Judge
Cause No. 18C03-1004-FB-11

**October 17, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Stanley D. Wills ("Wills) was convicted, following a jury trial, of aiding in the commission of armed robbery, a Class B felony,[1] conspiracy to commit armed robbery,[2] a Class B felony, theft[3] as a Class C felony, and criminal confinement[4] as a Class B felony. The jury also found Wills to be an habitual offender.[5] The trial court sentenced Wills to an aggregate sentence of sixty years and ordered him to pay restitution for the unrecovered stolen money. He appeals, raising the following restated issues:

I.  Whether Wills's convictions for robbery and conspiracy to commit robbery constitute a violation of Indiana's constitutional protection against double jeopardy;

II.  Whether the trial court abused its discretion in admitting evidence obtained pursuant to a search warrant that Wills contends was not supported by probable cause;

III.  Whether the trial court abused its discretion in admitting the hearsay testimony of a witness for the prosecution;

IV.  Whether there was sufficient evidence to identify Wills as the person who committed the crimes;

V.  Whether the trial court erred in allowing the amendment of the charging information to include a new charge for criminal confinement; and

---

[1] *See* Ind. Code §§ 35-42-5-1(1), 35-41-2-4. Count 1 of the criminal information charged that Wills "did knowingly aid, induce or cause John D. Repass to commit the crime of robbery while John D. Repass was armed with a deadly weapon . . . ." *Appellant's App*. at 398. Hereinafter, we will also refer to this crime as robbery.

[2] *See* Ind. Code §§ 35-41-5-2, 35-42-5-1(1). Hereinafter, we will also refer to this crime as conspiracy to commit robbery.

[3] *See* Ind. Code § 35-43-4-2(a).

[4] *See* Ind. Code § 35-42-3-3(a)(1).

[5] *See* Ind. Code § 35-50-2-8.

VI.    Whether theft is a lesser included offense of robbery such that the two convictions cannot stand.

We affirm in part, reverse in part, and remand.

## FACTS AND PROCEDURAL HISTORY

The facts most favorable to the convictions reveal that, in 2009, Wills was friends with John Repass ("Repass"). During that year, Wills periodically lived with Maranda Conley ("Conley"), who lived at 203 East Dartmouth Avenue in Muncie, Indiana and was the mother of one of his children.

From January through May 2009, Wills spent a fair amount of time with Repass. At first, the men talked generally about robbing a bank and, later, talked specifically about robbing a branch of Industrial Centre Federal Credit Union ("the Bank") in Muncie. Pursuant to the plan, Repass would carry a gun and "contain" any men inside the Bank, and Wills, who was more physically imposing, would "contain" the women. *Tr.* at 256. On May 26, 2009, the day before the robbery, Wills and Repass told Conley to buy disguises for them. The men also sent Conley to scout out the layout of the Bank.

On the morning of May 27, 2009, Repass borrowed a black 2005 Pontiac G-6 ("Pontiac") to use as a getaway vehicle. When he arrived at the Dartmouth Avenue address, Wills and Conley gave Repass Latex gloves and a silver, Jemenez .380 handgun to use during the robbery. After noticing that the Pontiac had an identifiable license plate, Wills, Repass, and Conley drove around a nearby parking lot, stole a license plate from a comparable car, and put it on the Pontiac. The three then drove repeatedly around the Bank and then returned to the Dartmouth house and drank a few shots. They then

3

returned to the Bank and saw a Brinks truck leaving the empty parking lot.

Shortly after 1:00 p.m., the men walked into the Bank; Conley, as the getaway driver, waited in the car. Repass, a white male, was wearing a plaid flannel shirt, a long, curly fake beard, a mask, a hat, and sunglasses, and was armed with a handgun. He also carried a black duffle bag for the money. Wills, a black male, was wearing a wig with dreadlocks pulled back into a ponytail, and had a couple days' growth of facial hair. Both men wore Latex gloves.

Repass pointed his gun at the three tellers, Braden Drown ("Drown"), Donna Cummins ("Cummins"), and Pam Lambert ("Lambert"), and told them to back away from the counters. Wills and Repass jumped over the counters, and Repass tossed the black duffle bag to Wills. Repass then grabbed Drown's hand, took him to a utility closet, pressed the gun against Drown's forehead, and asked about the location of the vault. Drown described the location of the vault, but Repass told Drown to show him. Drown led the way to the vault, while Repass followed him with a gun.

Meanwhile, Wills grabbed Cummins by the back of her hair and made her open her cash drawer. Wills stuffed the money into the black bag and then made Lambert and Cummins take him to the vault, where Cummins opened the vault. Repass and Drown arrived at the vault to find Cummins and Lambert on their knees. Repass ordered Cummins to take the money from the vault, including the money that had just been delivered by Brinks, and place it into the black bag. The money from Brinks largely consisted of new bills with serial numbers in sequential order. The men stole about $250,000.

Wills took the money and fled to the Pontiac. As Repass was leaving the Bank, he ordered the tellers into another office and told them to get on their hands and knees. Repass told them "no cops or you're dead." *Tr.* at 211. He then yanked the phone and computer cords out of the wall and left the Bank.

Conley drove Wills and Repass to the Dartmouth house. There, Conley changed back the license plate, and Repass and Wills opened the bag of money and "pulled a couple [of bundles] out, [and] set them aside for [Conley]." *Id.* at 245-46. Repass and Wills then drove to a hospital in Kokomo to borrow a car from Jamie Raisor ("Raisor"), who at that time was Repass's girlfriend. Raisor gave Repass the car keys in the hallway outside her office. A few minutes after Repass left, Raisor saw Repass and Wills come toward her in the hallway. Raisor testified that she and Wills looked straight at each other, but Wills just kept walking. Raisor was able to identify Wills because Raisor and Repass had lived with Conley and Wills in January and February of 2009, and Raisor had often seen Repass and Wills together.

Dominique Wills ("Dominique"), a cousin of Wills, learned about the robbery from Conley. On June 9, 2009, Dominique gave a statement to the police identifying Wills and Repass as the two bank robbers. Dominque was given a $5,000 reward for this information. Raisor also contacted police and gave them a statement. When shown a photo from the Bank surveillance camera, Raisor said she could identify Repass in one of the photographs by his work boots. She also identified Wills in another photograph by looking at his facial features. On June 16, 2009, Conley's mother, Vickie Carroll ("Carroll") learned that Conley had been arrested and charged with conspiracy to commit

5

robbery, along with other charges. Looking at pictures provided by the police, Carroll identified one of the men in the bank robbery as Wills.

Also on June 16, 2009, police searched Conley's home pursuant to a search warrant. In the master bedroom, the officers found two boxes of currency, one containing $9,352 and the other containing $2,065; a purse containing $2,500; a .40 caliber handgun, along with some ammunition and a holster; and a partial box of .380 caliber ammunition and an empty Jemenez Arms .380 caliber handgun box.

In the weeks after the robbery, it became obvious that Wills had come into a large sum of money. At trial, Edna Carey ("Carey"), an acquaintance of Wills, testified that Wills had called her in late May 2009 and asked her to meet him at a motorcycle club in Muncie, Indiana. When she arrived, Wills told her that he wanted to purchase a motorcycle, but because he was behind on his child support, he wanted to put the motorcycle in her name. *Tr.* at 317, 328. Carey agreed, and Wills gave her $11,000 in cash. *Id.* at 318. Carey testified that the money was in bundles of hundreds, and looked like it was new. *Id.* at 318, 320. In early June, Carey, with money in hand, drove with Wills and his cousin, Mike Peek ("Peek"), to Charleston, Illinois, to purchase a 2008 black and gold GSXR motorcycle. Carey paid for the motorcycle in cash, and the motorcycle was titled in her name; however, Wills took possession of the motorcycle. *Id.* at 324-25.

Kerry Janney ("Janney"), a salesman who in 2009 worked for ABC Motors, testified that, in June 2009, Peek went to ABC Motors and inquired about purchasing a car, supposedly for his daughter. Peek attempted to pay with cash and a money order, but

6

he did not have enough money. Peek said he needed to call his son. Soon thereafter, Wills arrived on the GSXR motorcycle and gave Janney one thousand dollars in two bundles of fifty dollar bills. *Id*. at 484-85. The title for the car was made out to Maranda Conley. *Id*. at 473.

In early July 2009, Repass was arrested in Midvale, Utah, and charged with robbery, conspiracy, and an habitual enhancement. The Midvale police told Repass that they knew Wills was also involved in the robbery. *Tr*. at 277-78. Repass confessed, implicated Wills as his accomplice, and said that Conley drove the getaway car. *Appellant's App*. at 397. In December 2009, Repass recanted his story in a letter to Wills's attorney, stating that Wills had nothing to do with the robbery.

Repass ultimately signed a plea agreement, wherein he agreed to plead guilty to robbery and testify for the State, and in exchange, the State would dismiss the conspiracy charge and the habitual offender enhancement. The State also agreed to speak favorably at Repass's sentencing hearing and to recommend therapeutic community treatment for his substance abuse. *Id*. at 285.

Wills was initially charged on July 22, 2009, with armed robbery, conspiracy to commit armed robbery, and theft, and his case was assigned to the court of Judge Richard A. Dailey. About two weeks later, the State filed notice of intent to seek an habitual offender enhancement as to Count 2, the conspiracy count, and about nine months later, the State filed leave to amend the information to add a count of criminal confinement, Count 4. A procedural error on the part of the State resulted in Count 4 being prematurely filed. To remedy the error, the State filed a motion to dismiss Count 4,

which Judge Dailey granted. *Appellant's App*. at 318. The State again requested leave to amend the information to add Count 4, but during a hearing held April 26, 2010, Judge Dailey denied the State's motion because of its proximity in time to the trial date.

On April 29, 2010, pursuant to Wills's request, the instant case was transferred from Judge Dailey's court to the court of Judge Linda Ralu Wolf. On May 24, 2010, the State amended the information to add a count of confinement, Count 4. Three days later, Wills filed a motion to dismiss Count 4, alleging that it was in violation of principles of *res judicata* and law of the case, and that this new count was filed beyond the omnibus date set in Judge Dailey's court. *Appellant's App*. at 298. On June 8, 2010, Judge Wolf denied Wills's motion to dismiss Count 4, noting that it was filed prior to June 14, 2010, the omnibus date set in Judge Wolf's court. *Id*. at 251.

On July 20, 2012, Wills filed a motion to suppress cash and weapons obtained from Conley's house pursuant to a warrant for reason that there was no probable cause to support the search. Specifically, Wills alleged that Detective Winningham's affidavit in support of the search was obtained: (1) without corroborating Dominique's reliability; (2) upon false statements; and (3) upon embellished statements by Detective Winningham. *Appellant's App*. at 135. The trial court denied the motion following a hearing on the morning of trial, and prior to jury selection. At trial, the evidence was admitted over Wills's objection.

At Wills's trial, Repass testified that Wills was his accomplice in robbing the Bank, and Raisor and Carroll testified that they identified Wills from the surveillance photos in the Bank. Additionally, Raisor testified that Wills was with Repass when he

8

came to borrow her car. Wills testified that the money at Conley's house was his, but claimed that he received the money, new bills with consecutive serial numbers, as payment for selling drugs. *Tr.* at 591-92.

The jury found Wills guilty on each count. The trial court entered judgment of conviction as to robbery, conspiracy to commit robbery, criminal confinement, and theft, and found Wills to be an habitual offender. Wills was sentenced to an aggregate sentence of sixty years, consisting of twenty years for robbery, twenty years for conspiracy to commit robbery, enhanced by twenty years for being an habitual offender, all of which were ordered to be served consecutively. Additionally, the trial court sentenced Wills to eight years for theft and twenty years for criminal confinement, which were ordered to be served concurrently with the other counts. The trial court also found Wills, with Repass, to be jointly and severally responsible to pay restitution[6] in the amount of $194,894, which reflected the amount of money that was not recovered after the robbery. Wills now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I.     Double Jeopardy

Wills contends that his separate convictions for aiding in armed robbery and conspiracy to commit armed robbery violate the double jeopardy clause of the Indiana

---

[6] Restitution was ordered to be paid in favor of CUMIS Insurance, the company that covered the Bank's losses. *Tr.* at 781.

9

Constitution,[7] and, therefore, his conviction for conspiracy to commit armed robbery should be vacated.[8] Our Supreme Court has held that two or more offenses are the "same offense" in violation of Indiana's double jeopardy clause "if, with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense."[9] *Richardson v. State,* 717 N.E.2d 32, 49 (Ind. 1999). Thus, *Richardson* created two essential tests, one focusing on the "statutory elements" of the charged crimes, and the other focusing on the "actual evidence" relied upon by the trier of fact in convicting the defendant on the challenged charges.

Here, Wills's double jeopardy challenge is based only on the *actual evidence test*. Under the actual evidence test, "a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one

---

[7] Article I, Section 14 of the Indiana Constitution provides in part that "[n]o person shall be put in jeopardy twice for the same offense." Wills does not claim violation of the federal Double Jeopardy Clause.

[8] Wills, proceeding under the assumption that this court will find a double jeopardy violation and vacate his conspiracy conviction, also maintains that his habitual offender determination, which enhances his sentence for conspiracy, should also be vacated and his sentence should be revised accordingly. Finding, as we do, that Wills's conviction for robbery and conspiracy to commit robbery do not violate Indiana's Double Jeopardy Clause, we do not reach his habitual offender argument.

[9] Prohibitions against double jeopardy protect against:

> (1) reprosecution for an offense after a defendant has already been convicted of the same offense in a previous prosecution; (2) reprosecution of a defendant after an acquittal; (3) multiple punishments for the same offense in a single trial; (4) reprosecution of a defendant after the conviction has been reversed for insufficient evidence; (5) criminal reprosecution of a defendant in limited circumstances following a previous civil prosecution; [and] (6) reprosecution of a defendant in limited circumstances after a mistrial has been declared.

*Richardson v. State*, 717 N.E.2d 32, 37 n.3 (Ind. 1999) (internal citations omitted).

10

offense may also have been used to establish the essential elements of a second challenged offense." *Estrada v. State*, 969 N.E.2d 1032, 1044 (Ind. Ct. App. 2012), *trans. denied*. The possibility must be reasonable, not speculative or remote. *See Spivey v. State*, 761 N.E.2d 831, 834 n.6 (Ind. 2002) ("If the possibility were only speculative or remote, there would be no violation of the Double Jeopardy Clause under the actual evidence test."). "Application of the actual evidence test requires the reviewing court to identify the essential elements of each of the challenged crimes and to evaluate the evidence from the fact-finder's perspective, considering where relevant the jury instructions, arguments of counsel, and other factors that may have guided the factfinder's determination." *Estrada*, 969 N.E.2d at 1044 (citing *Spivey*, 761 N.E.2d at 832).

Here, the evidence presented at trial established the following facts related to the conspiracy charge. Repass testified that, around the time of the robbery, he and Wills were friends who spent a lot of time together, and engaged in loose talk about robbing a bank. *Tr*. at 255. Eventually, their conversations became more specific, and they decided to rob the Bank. *Id*. at 256. Repass testified that the two men agreed that Repass would "have the pistol and contain any of the guys," and Wills would "contain, or go with the females." *Id*. The day before the robbery, Wills and Repass sent Conley to scout out the layout of the bank. *Id*. at 257-58. They also sent her to buy disguises. *Id*. at 261. On the morning of the robbery, Repass borrowed a Pontiac and then stopped by the Dartmouth Avenue house and picked up Conley and Wills. Wills and Conley provided Repass with Latex gloves. Noticing that the Pontiac had easily identifiable

11

plates, the three drove around a parking lot, found a comparable car, and stole its license plate as a replacement for the Pontiac license plate. *Id*. at 259-60.

The jury's application of the evidence was directed by the court's instructions, which included the language of Indiana Code section 35-41-5-2 as well as the State's formal information charging conspiracy to commit robbery. Instruction Number 6 set forth the elements of conspiracy under Indiana Code section 35-41-5-2 as follows:

> A person conspires to commit a felony when, with intent to commit the felony, he agrees with another person to commit the felony. A conspiracy to commit a felony is a felony of the same class as the underlying felony. The state must allege and prove that either the person or the person with whom he agreed performed an overt act in furtherance of the agreement.

*Appellant's App*. at 427. Instruction Number 3, regarding the charging information for the conspiracy count, expressly alleged that Wills, with intent to commit armed robbery, did agree with Repass to commit armed robbery and in furtherance of that agreement committed one or more of the following acts, "did obtain or retain a disguise," and did go to the Bank. *Appellant's App*. at 422. During closing argument, the State, again highlighting the elements, observed, "And there's been no dispute that the robbery of this bank, obviously was carried out with enough planning that disguises and gloves were purchased and used in order to carry it out."[10] *Tr*. at 637. Here, the State made clear that it was not the act of robbing the Bank that was the overt act, but instead, the acquisition of the disguises on the day before the robbery that was the overt act on which it

---

[10] The fact that Conley went to the Bank to stake it out on the day before the robbery could constitute evidence of an overt act in furtherance of the agreement. Going to the Bank on the day of the robbery, however, is an essential element of committing the robbery. Because the State failed to set forth which act of going to the bank it was referring to as the over act, we do not consider that factor in reaching our decision, and the State, likewise, dropped that consideration in its closing argument.

specifically relied to show that Wills had taken a step in furtherance of the agreement he had with Repass to rob the Bank.

Regarding the robbery conviction, the jury heard evidence that, on the afternoon of May 27, 2010, two men, an armed white man and an unarmed black man, entered the Bank and proceeded to jump over the teller counters. Tellers were ordered to take the robbers to the Bank vault, and one of the tellers was forced to open it. *Id*. at 210. The men then stuffed money, including money recently delivered by Brinks, into a black bag and fled. *Id*. at 211. Repass testified that he was the armed white man and that Wills was the unarmed black man. *Id*. at 234-35. The robbery was recorded on security cameras at the Bank. Raisor, Repass's ex-girlfriend, and Carroll, Conley's mother, testified that one of the two men caught on the Bank's security camera looked like Wills.

Again, the jury's application of the evidence was directed by the trial court's instructions, which included the language of Indiana Code section 35-42-5-1 as well as the State's formal information charging armed robbery. Instruction Number 4 set forth the elements armed robbery under Indiana Code section 35-41-5-2 as follows:

> A person who knowingly or intentionally takes property from another person or from the presence of another person using or threatening the use of force on any person commits Robbery, a Class C felony. However, the offense is a Class B felony if it is committed while armed with a deadly weapon.

*Appellant's App*. at 425. Instruction Number 5 set forth the elements of aiding or inducing under Indiana Code section 35-41-2-4 as follows:

> A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense, even if the other person:
> (1) has not been prosecuted for the offense;

13

> (2) has not been convicted of the offense; or
> (3) has been acquitted of the offense.

*Id*. at 426. Instruction Number 3, regarding the charging information for robbery count, expressly alleged that Wills, "did knowingly aid, induce or cause [Repass] to commit the crime of robbery while [Repass] was armed with a deadly weapon . . . ."[11] *Id*. at 421.

The evidence required to convict Wills of conspiracy to commit robbery arose from events that occurred before the Bank was robbed, *i.e.*, that Wills and Repass agreed to rob the Bank and that they took the overt action of obtaining disguises in order to rob the Bank. The evidence required to convict Wills of aiding or inducing Repass to commit armed robbery arose from events that occurred inside the Bank, *i.e.*, that Wills and Repass entered the Bank, that Repass was armed with a weapon, and that the two men placed almost $250,000 of the Bank's money in a black bag and fled. To be convicted of conspiracy, the Bank did not have to be robbed. Likewise, to be convicted of armed robbery, no advanced agreement to rob the Bank was necessary. Under the instant facts, we find that Wills's convictions for both armed robbery and conspiracy to commit armed robbery do not violate Indiana's double jeopardy principles.

## II. Suppression of Evidence

During a search of the Dartmouth Avenue home pursuant to a search warrant, officers found money and guns. Wills argues that probable cause did not support the issuance of the search warrant, and therefore, the evidence resulting from the search was

---

[11] Wills suggests that double jeopardy may arise because the jury found that aiding in the acquisition of the disguises supported both his conviction for conspiracy and the substantive crime of aiding in armed robbery. *Appellant's Br*. at 11-12. We disagree. Noting that the security footage and the testimony of Repass and others place Wills inside the Bank when it was robbed, we do not think that the jury convicted Wills of aiding in the robbery based on the mere fact that he helped acquire the disguises.

14

erroneously admitted.

A trial court is afforded broad discretion in ruling upon the admissibility of evidence, and we will reverse such a ruling only when the defendant has shown an abuse of discretion. *Lanham v. State*, 937 N.E.2d 419, 422 (Ind. Ct. App. 2010). An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court. *Id*. "However, if a trial court abused its discretion by admitting the challenged evidence, we will only reverse for that error if the error is inconsistent with substantial justice or if a substantial right of the party is affected." *Lehman v. State*, 926 N.E.2d 35, 37 (Ind. Ct. App. 2010), *trans. denied*. "Any error caused by the admission of evidence is harmless error for which we will not reverse a conviction if the erroneously admitted evidence was cumulative of other evidence appropriately admitted. *Id*.

Assuming without deciding that the search warrant was not supported by probable cause and that the trial court abused its discretion in admitting, over Wills's objection, the evidence found during the search of the Dartmouth Avenue home, we find that this error was not inconsistent with substantial justice or with Wills's substantial rights. Wills's strategy at trial was to deny that he was involved in the robbery. The testimony of Repass, however, specifically connected Wills to the robbery and the conspiracy. So, too, did the testimony of Conley's mother, Carroll, and Repass's ex-girlfriend, Raisor, who testified that they believed Wills and Repass were the men pictured robbing the Bank in the surveillance footage. *Tr*. at 299, 373. Carroll testified that she recognized Wills because she saw her granddaughter (Wills's daughter) every day, and that they both

15

have the same eyes and cheeks. *Id*. at 373-74.

Wills testified on direct examination that, at the time of the robbery, he did not live at the Dartmouth Avenue home. *Id*. at 577. Even so, Wills did not try to distance himself from the money found on the premises. Instead, as a means to explain how he could afford to purchase the motorcycle that Carey and Janney testified Wills owned, Wills admitted that the money found at the Dartmouth Avenue home was his, and claimed that he had made this money selling drugs. *Id*. at 579. There was sufficient evidence to connect Wills to these crimes even without the evidence found in the Dartmouth Avenue house. We do not reverse Wills's convictions on this issue, finding that Wills was not prejudiced by the admission of the evidence found pursuant to the search.

### III. Hearsay

Wills maintains that the trial court abused its discretion when it allowed Dominique to testify regarding statements that Conley made to her after the robbery had occurred. Specifically, Wills contends that Dominique's statements were inadmissible hearsay.

Errors in the admission of evidence, including hearsay, are to be disregarded as harmless unless they affect the substantial rights of a party. Ind. Trial Rule 61; *Robertson v. State*, 877 N.E.2d 507, 514 (Ind. Ct. App. 2007) (citing *Sparkman v. State*, 722 N.E.2d 1259, 1263 (Ind. Ct. App. 2000)). "In determining whether error in the introduction of evidence affected a defendant's substantial rights, we must assess the probable impact of the improperly admitted evidence upon the jury." *Robertson*, 722 N.E.2d at 514. "When

16

there is substantial independent evidence of guilt such that it is unlikely that the erroneously admitted evidence played a role in the conviction or where the offending evidence is merely cumulative of other properly admitted evidence, the substantial rights of the party have not been affected, and we deem the error harmless." *Id*. (citing *Smith v. State*, 839 N.E.2d 780, 784 (Ind. Ct. App. 2005)).

Assuming without deciding that Dominique's testimony contained inadmissible hearsay, we find that any error in the admission of that testimony was harmless error. Wills does not cite to any specific prejudice he suffered as a result of Dominique's testimony, and our review of the record reveals none. Dominique's testimony did not strongly support the State's case. On direct, the State asked Dominique to elaborate on and confirm statements that Conley made to her about the robbery. When asked about specifics, Dominique repeatedly answered that she couldn't remember or didn't know. *Tr*. at 334, 335, 339, 340, 342, 343, 344, 346, 349, 350, 351, 352, 354, 355, 356, 357. She also gave equivocal answers like, "I guess" and "I think so." *Id*. at 337, 338. When asked whether Conley spoke with Dominique about the robbery, Dominique said no. *Id*. at 338.

During her testimony, Dominique repeated, more than once, that she did not remember what she told police in June 2009, because she was drinking a lot and doing drugs back then. *Id*. at 339, 342, 360. Elaborating, Dominique stated that she drank a lot of vodka and would pass out on almost a daily basis. *Id*. at 360. She also testified that, for her, the $5,000 she received for identifying Repass and Wills as the robbers was a lot of money. From this testimony, we cannot say that any of Dominique's testimony,

17

whether hearsay or not, affected the substantial rights of Wills. *Robertson*, 877 N.E.2d at 514.

### IV.  Sufficiency of the Evidence

Wills next asserts that there was insufficient evidence to identify him as one of the participants in the robbery. *Appellant's Br*. at 21. The standard of review for claims of insufficient evidence is well settled. We do not reweigh the evidence or judge the credibility of the witnesses, and we respect the jury's exclusive province to weigh conflicting evidence. *Jackson v. State*, 925 N.E.2d 369, 375 (Ind. 2010). We consider only the probative evidence and reasonable inferences supporting the verdict and affirm if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Id*. "A verdict may be sustained based upon circumstantial evidence alone if that circumstantial evidence supports a reasonable inference of guilt." *Lacey v. State*, 755 N.E.2d 576, 578 (Ind. 2001).

Because Repass identified Wills as an accomplice in the robbery, Wills contends that the evidence of his identity is insufficient under the incredible dubiosity rule because Repass was not a credible witness. *Appellant's Br*. at 21. Appellate courts may "apply the 'incredible dubiosity' rule to impinge upon a fact finder's function to assess the credibility of a witness." *Turner v. State*, 953 N.E.2d 1039, 1059 (Ind. 2011). "Application of this rule is very narrow and permitted only 'where a sole witness presents inherently contradictory testimony that is equivocal or coerced and there is a lack of circumstantial evidence of guilt.'" *Id*. (quoting *Whedon v. State*, 765 N.E.2d 1276, 1277

18

(Ind. 2002)).

Wills offers that the tellers at the Bank could not identify him in a photo array even though Wills "had an account at the Bank," and that the testimony of Dominique should have been excluded as inadmissible hearsay. *Appellant's Br.* at 22. Accordingly, Wills contends that "the only credible evidence that it was [Wills] at the [B]ank came from co-defendant, John Repass himself," who testified at trial. *Id.* at 21. Wills also maintains that the identification evidence was biased because Repass gave it to obtain a favorable plea agreement and the evidence was "contradictory to [Repass's] prior statements." *Id.* at 22.

The incredible dubiosity rule does not apply to this case because there was testimony from more than one witness, and that testimony was not inherently improbable. Drown, a teller at the Bank, testified that around 1:00 p.m. on the day of the robbery, a white man and a black man entered the Bank wearing disguises. *Tr.* at 197-98. The Bank security system recorded a white man and a black man robbing the Bank. Repass testified that he robbed the Bank and that Wills and Conley were also involved in the robbery, saying Conley "was the driver and [Wills] was with me." *Id.* at 233, 234. Raisor, Repass's ex-girlfriend, who had spent a significant amount of time with Wills and Conley, identified Repass as the white man in the Bank and identified Wills as the black man. *Id.* at 299. Raisor also testified that around 4:00 p.m. or 5:00 p.m. on the day of the robbery, Repass and Wills came to her place of employment and borrowed her car so that Repass could take Wills to his mother's house in Indianapolis; this was circumstantial evidence that the two had been together earlier in the day. *Id.* at 297, 298. Conley's

mother, Carroll, testified that Wills had "stashed some money in [Conley's] house." *Id.* at 371. Carroll also testified that, when police showed her a photograph from Bank surveillance, she said, "it looked like Stanley Wills." *Id.* at 373. Finally, Wills, testifying on his own behalf, conceded that the money at Conley's house was his, but claimed that he received the cash, some of which was uncirculated with consecutive serial numbers, as payment for drugs he sold. *Id.* at 591-92.

Furthermore, even if Repass had been the only witness to testify, he did not make any inconsistent statements at trial as required under the incredible dubiosity rule. When Repass was initially arrested, he did not implicate anyone else in the robbery and said that the getaway car was gold instead of black. Once Repass realized, however, that the police also suspected Wills, Repass told the police the same version of events to which he testified at trial. Although Repass wrote a letter to Wills's attorney prior to trial stating that he was not with Wills and Conley on the day in question, Repass testified at trial that his statements in the letter were not true. He said that he and Wills had talked about writing those letters because they thought they "had found a way to be able to beat [the charges]." *Id.* at 266.

Likewise, Repass's testimony was not coerced. Instead, Repass decided to accept a plea agreement whereby he would plead guilty to armed robbery and testify against Wills, and in exchange, the State would drop a count of conspiracy and an habitual offender enhancement. *Id.* at 262. The jury was informed of this plea agreement and was able to judge Repass's credibility in light of this deal.

The State presented sufficient evidence to prove that Wills committed the crimes

with which he was charged. The question of whether Wills was involved in the robbery was an issue of witness credibility. The function of weighing witness credibility lies with the trier of fact, not this court. *Whatley v. State*, 908 N.E.2d 276, 283 (Ind. Ct. App. 2009), *trans. denied*. Here, Wills is asking this court to reweigh the evidence and judge the credibility of the witnesses, which we cannot do. *See Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007).[12]

## V.    Amendment of Charging Information

Wills asserts that the trial court erred in permitting the State to amend his charging information to add Count 4, arguing that the amendment was untimely filed. Specifically, he contends that it was error for Judge Wolf to change the omnibus date to June 14, 2010, a date that was almost nine months later than the omnibus date established in Judge Dailey's court.[13]

Indiana Code section 35-34-1-5 sets forth the time frame during which the State may amend a criminal information. That section distinguishes between substantive amendments and amendments to form. *Gibbs v. State*, 952 N.E.2d 214, 221 (Ind. Ct. App. 2011), *trans. denied*. Wills argues that the addition of Count 4 was a substantive change. Because the addition of Count 4 would be timely regardless of whether it was

---

[12] While Wills does not specifically contend that there was insufficient evidence of identification for the theft conviction or the criminal confinement conviction, two crimes that were committed in connection with the robbery, we note that, had Wills been successful in proving insufficient evidence of identity with respect to the robbery conviction, it would have followed that there was insufficient evidence of identity for those crimes as well.

[13] In his brief, Wills alludes to his trial attorney's arguments pertaining to res judicata and law of the case; however, Wills does not renew either of those arguments on appeal. Therefore, those arguments are waived, and we address only the question of whether Count 4 was timely filed.

21

deemed of form or substance, we assume without deciding that the addition of Count 4 was a substantive amendment.

At the time of the instant offense, Indiana Code section 35-34-1-5(b) provided:

> The indictment or information may be amended in matters of substance and the names of material witnesses may be added, by the prosecuting attorney, upon giving written notice to the defendant at any time:
>     (1) up to:
>             (A) thirty (30) days if the defendant is charged with a felony; or
>             (B) fifteen (15) days if the defendant is charged only with one (1) or more misdemeanors;
>         before the omnibus date; *or*
>         (2) *before the commencement of trial*;
>     *if the amendment does not prejudice the substantial rights of the defendant*.

(Emphasis added). Because this statute is written in the disjunctive, an amendment to add a felony is permitted either if it is filed (1) thirty days before the omnibus date or (2) "before the commencement of trial" and "does not prejudice the substantial rights of the defendant." Ind. Code § 35-34-1-5(b). Because we address the latter deadline, we need not reach the omnibus question in order to address the issue of whether the trial court erred in granting the State's amendment to add the criminal confinement charge. Instead, we need only determine whether the filing of Count 4 occurred before the start of trial and whether it prejudiced the substantial rights of the defendant.

On July 22, 2009, the State filed a three-count criminal information against Wills in the court of Judge Dailey, who set the omnibus date for October 29, 2009. On April 23, 2009, the State Prosecutor, Jeffrey Arnold ("Arnold") filed a motion for leave to amend the information to add Count 4, which provided:

> [O]n or about May 27, 2009, . . . [Wills] did knowingly confine [Cummins], [Drown], and [Lambert] in an office at [the Bank] without the consent of [Cummins], [Drown], and [Lambert] said defendant being armed with a deadly weapon, to wit: a handgun, contrary to Indiana Code section 35-42-3-3(a)(1).

*Appellant's App.* at 328. Inadvertently, Arnold's investigator prematurely filed Count 4 before the State had obtained the necessary permission from the trial court for leave to amend. Accordingly, that same day, the State filed a motion asking the trial court to dismiss Count 4 because it had been improperly filed, and Judge Dailey granted the State's motion. *Id.* at 318. The State again requested leave to amend the information to add Count 4. Judge Dailey held a hearing on April 26, 2010, and denied the State's motion. While Judge Dailey did not specify his reasons, his statements suggested that the motion was denied because it would be unfair to Wills to add an additional count when the trial was set for May 10, 2010, just two weeks away. *Dailey Tr.* at 16.

On April 29, 2010, pursuant to Wills's request, the instant case was transferred from Judge Dailey's court to Judge Wolf's court. On May 20, 2010, Judge Wolf set a new trial date of August 2, 2010. Four days later, on May 24, 2010, the State again filed an amendment to add Count 4 to the information. Over Wills's objections that Count 4 could not be added because it was filed beyond the omnibus date, Judge Wolf allowed the information to be amended to add Count 4 on June 8, 2010, a date that was almost two months before the trial date. Ultimately, Wills's trial began on July 23, 2012, more than two years after the State gave notice of its intention to charge Wills with confinement. Here, Wills has not shown how the amendment to add Count 4, which Wills knew about

23

more than two years before trial, prejudiced his substantial rights. We find that the trial court did not err in allowing the State to amend the information to add Count 4.

## VI. Theft as Lesser Included Offense

Wills finally contends, and the State correctly concedes, that Wills was improperly convicted and sentenced for both robbery and the lesser included offense of theft. *Appellant's Br.* at 27; *Appellee's Br.* at 47. Indiana Code section 35-38-1-6 provides: "Whenever: (1) a defendant is charged with an offense and an included offense in separate counts; and (2) the defendant is found guilty of both counts; judgment and sentence may not be entered against the defendant for the included offense." Our court has held that "'theft is an inherently included lesser offense of robbery. One cannot commit robbery without also committing theft.'" *Buchanan v. State*, 913 N.E.2d 712, 720 (Ind. Ct. App. 2009) (quoting *Johnson v. State,* 749 N.E.2d 1103, 1109 (Ind. 2001)). Accordingly, we vacate Wills's conviction for theft as a lesser included offense of robbery and remand to the trial court for further proceedings consistent with our memorandum decision. In all other respects, we affirm the trial court.

Affirmed in part, reversed in part, and remanded.

ROBB, C.J., and RILEY, J., concur.